IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MCCANN,<br><br>            Plaintiff,<br><br>   v.<br><br>KENNEDY UNIVERSITY HOSPITAL, INC.,<br><br>            Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 12-1535 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Robert McCann, Pro se
4A Spar Drive
Sicklerville, NJ 08081

Thomas M. Walsh, Esq.
PARKER MCCAY, PA
Three Greentree Centre – Suite 401
Route 73 & Greentree Road
P.O. Box 974
Marlton, NJ 08053
    -and-
John D. Cirrinicione, Esq.
PARKER MCCAY, PA
9000 Midlantic Drive
Suite 300
P.O. Box 5054
Mt. Laurel, NJ 08054
    Attorneys for Defendant Kennedy University Hospital, Inc.

**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

    This matter comes before the Court on Defendant Kennedy University Hospital, Inc.'s motion for summary judgment. [Docket

Item 93.] In this action, Plaintiff Robert McCann, who is proceeding pro se, asserts a single claim against Defendant under the Emergency Medical Treatment and Active Labor Act ("EMTALA") arising from an incident in which Defendant allegedly delayed and withheld medical treatment in the emergency room at Kennedy Hospital after learning that Plaintiff was uninsured. Defendant's motion turns on whether Plaintiff has adduced sufficient evidence to support a claim under EMTALA, giving him all favorable inferences from the admissible evidence of record.

For the reasons discussed below, the Court will grant Defendant's motion for summary judgment.

**II. BACKGROUND**

**A. Facts**

The Court deems the following facts undisputed.[1] On December 21, 2011, Plaintiff presented at Kennedy Hospital in Washington

---

[1] Plaintiff's brief contains a section titled "Affidavit," in which he states, in separately numbered lines, that he disputes the facts set forth in Defendant's "Facts" section. Plaintiff provides no citation to any evidence in the record. Although this section contains a space for Plaintiff's signature, it remains unsigned. L. Civ. R. 56.1 requires the opponent of a motion for summary judgment to identify each material fact in dispute and to cite "to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1. "Local Rule 56.1(a) thus puts the onus on the parties, rather than the Court, to find evidence of record supporting their respective arguments." McCann v. Unum Provident, 921 F. Supp. 2d 353, 358 (D.N.J. 2013). Because Plaintiff only states that he disputes the facts identified by Defendant and fails to reference evidence in the record, the Court will deem Defendant's facts undisputed. Id. Moreover, the Court notes that

Township with complaints of rectal bleeding and back pain. (Def. Ex. C [Docket Item 93-3.]) Plaintiff arrived at the emergency room at 10:32 p.m. (Id.) Plaintiff was seen 14 minutes later at 10:46 p.m. by triage nurse, John M. DiDomenico, R.N. (Id.) The triage notes indicate that Plaintiff presented for an evaluation of rectal bleeding which began one week prior. (Id.) Plaintiff told Nurse DiDomenico that he injured his right knee and buttocks the previous Wednesday while at a casino. (Id.) Plaintiff further advised that he slipped and fell on the morning of December 21, 2011 and was experiencing pain, constant pressure, and stinging. (Id.) Plaintiff's admission urgency was graded an ESI3. (Id.) Plaintiff was admitted, but needed to wait for a bed. (Id.)

At 10:49 p.m., three minutes after his triage evaluation, another nurse, Erica Brown-Young, R.N., recorded Plaintiff's vital signs. (Id.) By 10:55 p.m., Nurse Brown-Young had recorded Plaintiff's medications and completed a head-to-toe assessment. (Id.) Plaintiff described intermittent aching in his lower back, which he rated as six out of ten, as well as rectal bleeding and

---

Plaintiff's reference to state board of health documents and other documents "in the possession of the court" is also insufficient to satisfy L. Civ. R. 56.1. The Court is not required to sift through Plaintiff's previous filings to identify these documents, which may or may not exist, where Plaintiff has provided no citations to facts that would be admissible in evidence, as required by Rule 56(c), Fed. R. Civ. P.

pain from his buttocks to his lower back. (Id.) He also stated that his right knee "gave out on [him]." (Id.)

At 12:08 a.m. on December 22, 2011, Nurse Brown-Young noted that Plaintiff was at the entrance of the emergency room fully clothed. (Id.) Plaintiff responded with an angry affect when asked why he was leaving. (Id.) At 12:10 a.m., Dr. Costandinos Tsagaratos, D.O., noted that Plaintiff left without being seen by him. (Id.) Twenty-four minutes later, at 12:34 a.m., Plaintiff was re-admitted to the emergency room with the same complaints. (Def. Ex. D [Docket Item 93-3.]) At 12:44 a.m., triage nurse, Veronica Murphy, R.N., recorded Plaintiff's vital signs. (Id. at 2.) At 12:50 a.m., Nurse Murphy noted that Plaintiff complained of severe hemorrhoid pain and right knee pain from a slot machine falling on it three days prior. (Id. at 1.) At 1:39 a.m., an x-ray of Plaintiff's knee was completed, which showed no acute injury. (Id. at 4.) At 3:26 a.m., Plaintiff was examined by Dr. Tsagaratos. (Id. at 3.) Plaintiff appeared to be in pain and experiencing moderate distress. (Id.) Dr. Tsagaratos noted that "Plaintiff has what appears to be a tear at 6 o'clock position to anus approximately 1 cm posteriorly which is exquisitely tender." (Id.) Dr. Tsagaratos notified his attending, Dr. Sobers-Brown, of Plaintiff's condition. (Id.) Thereafter, Plaintiff remained in the emergency department under the care of the emergency department nurses,

4

Dr. Tsagaratos and Dr. Sobers-Brown. (Id.) Dr. Tsagaratos noted that Plaintiff became "irate on multiple occasions coming out to the hallway and cursing using 4 letter words," but that his medical condition had stabilized since arriving. (Id. at 4.) Plaintiff was discharged around 7:00 a.m. on December 22, 2011 with a diagnosis of "peri-anal abscess." (Id. at 5.) The discharge notes indicate that Plaintiff "was being loud and vulgar outside of room, pacing and demanding" and he requested the names of the nurse and "white" doctor, which Nurse Diana Hollup, R.N., provided. (Id.)

### B. Procedural background

On March 12, 2012, Plaintiff filed a one-count Complaint alleging that Defendant Kennedy University Hospital, Inc. violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, by delaying and withholding medical treatment at the emergency room on December 21-22, 2011 after learning that Plaintiff lacked health insurance. [Docket Item 1.] Defendant filed an Answer on August 1, 2012, denying Plaintiff's allegations and requesting that Plaintiff provide an affidavit of merit pursuant to N.J.S.A. § 2A:53A-26 et seq. [Docket Item 7.] On January 14, 2013, Plaintiff appeared for a deposition during which he confirmed that he was not alleging medical malpractice against Defendant. (McCann Dep. [Docket Item 93-3] 153:1-3.) Plaintiff has not served an affidavit of merit

5

or any other expert reports in this case. Accordingly, Plaintiff has no claim of medical malpractice.

As part of a contentious discovery process, Plaintiff filed a motion for sanctions due to Defendant's alleged spoliation of emergency room videotapes. [Docket Item 62.] After briefing and hearing argument on Plaintiff's motion regarding the emergency room videotape, Magistrate Judge Joel Schneider denied Plaintiff's motion for sanctions.[2] [Docket Item 97.] Judge Schneider found that, although Defendant was aware of Plaintiff's intent to sue weeks before the tapes were taped over, it was not unreasonable for Defendant to believe that Plaintiff's Complaint was based on the clinical care he received in the treatment area, and thus understood no need to preserve video tapes from the lobby. (Id. at 13-15.) Judge Schneider also noted the lack of bad faith, which is necessary to warrant a spoliation inference. (Id. at 18-20.)

Defendant filed a motion for summary judgment on August 15, 2013 [Docket Item 66], which it later withdrew by letter dated

---

[2] Subsequently, Plaintiff filed a motion for reconsideration [Docket Item 102] and a motion for recusal [Docket Item 103], both of which Judge Schneider denied. [Docket Items 116 & 121.] Plaintiff then lodged an appeal with the Third Circuit regarding Judge Schneider's initial denial of Plaintiff's motion for sanctions regarding the emergency room videotape and Judge Schneider's denial of Plaintiff's motion for reconsideration of same. By Order dated August 25, 2014, the Court of Appeals dismissed Plaintiff's appeal for lack of appellate jurisdiction. [Docket Item 124.]

November 22, 2013 because of discovery that Defendant produced late to Plaintiff. [Docket Item 86.] Defendant filed the instant motion for summary judgment within the deadline provided by Judge Schneider. [Docket Item 90.] Plaintiff filed opposition [Docket Item 98],[3] and Defendant has not filed a reply.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that

---

[3] Plaintiff initially filed opposition on January 21, 2014 [Docket Item 94], but six days later submitted a substantially similar opposition brief, requesting that the Court ignore "cryptic answers" in his initial submission and instead consider his most recent submission as his opposition to Defendant's motion. Because the Court finds that Plaintiff's submissions are nearly identical and Defendant will suffer no prejudice as a result, the Court will consider Plaintiff's most recent submission as his opposition to Defendant's motion for summary judgment.

7

evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

**IV. DISCUSSION**

Defendant argues that the Court should enter summary judgment in its favor because Defendant provided Plaintiff an appropriate medical screening examination to determine whether Plaintiff presented with an "emergency medical condition" as required under EMTALA. Moreover, Defendant asserts that Plaintiff has provided no evidence to create a genuine dispute of material fact as to the accuracy of the medical record. Plaintiff responds by primarily pointing to a dispute of facts regarding "the video tapes" and "citations issued by the State Board of Health, for numerous ETMALA violations." (Pl. Opp. [Docket Item 98] at 3.][4] Much of Plaintiff's opposition concerns his motion for sanctions based on the emergency room videotape and allegations of impropriety by Judge Schneider that form the basis of his motion to recuse.

"EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside hospital

---

[4] Because Plaintiff's opposition brief does not contain page numbers, the Court refers to the page numbers assigned by the electronic docketing system.

8

facilities."[5] <u>Torretti v. Main Line Hospitals, Inc.</u>, 580 F.3d 168, 172, <u>amended,</u> 586 F.3d 1011 (3d Cir. 2009). "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner. Although Congress was concerned that the indigent and uninsured tended to be the primary victims of

---

[5] The EMTALA provides in pertinent part:
    (a) Medical screening requirement
    In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.
    (b) Necessary stabilizing treatment for emergency medical conditions and labor
    (1) In general
    If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-
    (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
    (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
    . . .
    (c) Restricting transfers until individual stabilized
    (1) Rule
    If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual . . . .
42 U.S.C. § 1395dd.

patient dumping, EMTALA is not limited to these individuals." Id. at 173 (footnote omitted). See also 42 U.S.C. § 1395dd; Roberts v. Galen of Virginia, Inc., 525 U.S. 249, 252 (1999) (holding that EMTALA does not require a plaintiff to show that inappropriate stabilization resulted from an improper motive such as indigence, race, or sex of the patient).

EMTALA does not define what constitutes "appropriate medical screening," and the Third Circuit has not specifically addressed the issue. Byrne v. Cleveland Clinic, 519 F. App'x 739, 742 (3d Cir. 2013). However, the Court of Appeals has observed that EMTALA does not create a federal cause of action for malpractice. Id. Instead, the statute "was aimed at disparate patient treatment and '[l]iability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice.'" Id. (citing Torretti, 580 F.3d at 173-74). The "key requirement" of a hospital's duty under § 1359dd(a) "is that a hospital apply its standard of screening *uniformly* to all emergency room patients, regardless of whether they are insured or can pay. The Act does not impose any duty on a hospital requiring that screening result in a correct diagnosis." Davis v. Twp. of Paulsboro, 424 F. Supp. 2d 773, 779 (D.N.J. 2006) (quoting Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 856 (4th Cir. 1994)).

10

"Under EMTALA, when an individual presents for treatment at the emergency department of a hospital, the hospital must provide an appropriate medical screening to determine whether an emergency medical condition exists. If an emergency medical condition is determined to exist, the hospital ordinarily must provide stabilization treatment before transferring the patient."[6] Harry v. Marchant, 291 F.3d 767, 768 (11th Cir. 2002).

The Court finds that summary judgment is appropriate because Plaintiff has not provided any evidence that Defendant treated him differently than any other patient in the emergency room with similar complaints. The uncontradicted evidence in the record supports a finding that the emergency room staff provided an appropriate medical screening to determine whether Plaintiff was experiencing an emergency medical condition, and they then supplied stabilizing medical treatment. Plaintiff arrived at the emergency room at 10:32 p.m. Fourteen minutes later he underwent a triage evaluation, after which he was admitted and told to wait for a bed. A nurse checked his vital signs three minutes later. Six minutes thereafter a nurse completed a heat-to-toe assessment of Plaintiff during which he rated his lower back

---

[6] A plaintiff asserting a violation of the EMTALA's stabilization requirement must show that he or she "(1) had 'an emergency medical condition; (2) the hospital actually knew of that condition; [and] (3) the patient was not stabilized before being transferred.'" Torreti, 580 F.3d at 178 (quoting Baber v. Hosp. Corp. of Am., 977 F.2d 872, 883 (4th Cir. 1992)).

11

pain as a six out of ten. By 12:08 a.m., Plaintiff had left his room before being seen by Dr. Tsagaratos and was at the entrance of the emergency room fully clothed. Less than 30 minutes after leaving his room, Plaintiff was re-admitted to the emergency room. Again, in a matter of minutes, he was evaluated by a triage nurse and his vital signs were recorded.

Between his return to the emergency room at 12:34 a.m. and his discharge at 7:03 a.m., Plaintiff was seen by medical staff nine times, including at least two nurses and two doctors. The medical records from his treatment reflect consistent attention to Plaintiff's complaints, as well as assessment and treatment of his pain in his lower back, knee, and buttocks. Plaintiff's most acute complaint appears to have been pain in his anus. Treatment notes indicate that upon evaluation, Dr. Sobers-Brown observed what appeared to be an abscess. She noted that after treating the area with saline, Plaintiff said he felt better. Plaintiff was ultimately diagnosed with a peri-anal abscess and prescribed pain medication and antibiotics. Dr. Sobers-Brown instructed Plaintiff to follow up "with Ed or surgery" and emphasized the need to finish his antibiotics. Prior to discharge, Dr. Tsagaratos noted that Plaintiff had stabilized since arriving at the emergency room. Plaintiff adduces no admissible evidence to contradict any of these facts regarding screening and stabilization.

As in Byrne, it is clear in the present action that Defendant's "screening examination [was] not so cursory that it would fail to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury." Byrne, 519 F. App'x at 742 (citation omitted). Indeed, the emergency room staff appropriately screened Plaintiff on not just one, but two occasions, even though Plaintiff left his room before being seen by Dr. Tsagaratos and was threatening toward staff.[7] He received medication for his pain, underwent an x-ray for his knee, received treatment for his anal abscess, and was discharged in stable condition with appropriate follow-up instructions. Importantly, Plaintiff has not presented any evidence that Defendant's screening procedures were not applied uniformly as required under EMTALA. Therefore, the Court will grant Defendant's motion for summary judgment.

---

[7] Even if Plaintiff "wandered into the lobby" and collapsed in a state of incoherence as he alleges in his Complaint, the outcome would remain the same. The evidence in the record shows that Plaintiff was observed near the entrance of the emergency room at 12:08 a.m. and responded with an angry affect when approached by medical staff. He was re-admitted to the emergency room roughly twenty-five minutes later. Although staff had already screened Plaintiff and taken his vital signs, they diligently did so a second time in accordance with their procedures. Plaintiff has presented no evidence that he was treated any differently than someone similarly situated.

**V.   CONCLUSION**

For the reasons explained above, the Court will grant Defendant's motion for summary judgment. An accompanying Order will be entered.

September 11, 2014                               s/ Jerome B. Simandle
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge